IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD L. ABBOTT, | § | |
| | § | |
| Plaintiff Below, | § | No. 155, 2020 |
| Appellant, | § | |
| | § | Court Below – Court of Chancery |
| v. | § | of the State of Delaware |
| | § | |
| NORTH SHORES BOARD OF | § | |
| GOVERNORS, INC., BRUCE S. | § | C.A. No. 2019-0194-JRS |
| WILSON, DEBORAH M. DIRECTOR, | § | |
| HELEN HOART, and LOUISA | § | |
| HOLLMAN, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | | |

Submitted: January 6, 2021
Decided: February 19, 2021

Before **VAUGHN**, **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

## ORDER

After careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     In 2013, Appellant Richard L. Abbott purchased a home in North Shores, a private residential community located in Rehoboth, Delaware.[1]  Like every other property

---

[1] App. to Answering Br. 1, 3 (hereafter "B_").  Because the Court of Chancery dismissed Abbott's claims under Rule 12(b)(6), the Court takes the facts from Abbott's Amended Verified Complaint.

1

owner in North Shores, Abbott has been granted express easement rights to use the community's private roads and beach.[2]

(2)    Respondent North Shores Board of Governors, Inc. ("NSBG" or the "Corporation") is a Delaware not-for-profit corporation that maintains the North Shores community, enforces deed restrictions, and levies assessments.[3] NSBG derives its authority from a set of covenants adopted and recorded in 1972 (the "Covenants").[4]

(3)    Respondents Bruce S. Wilson, Deborah M. Director, Helen Hoart, and Louisa Hollman (collectively, the "Directors") were each a member of NSBG's board of directors during events relevant to this appeal.[5]

(4)    Since at least 2013, NSBG has imposed annual assessments to fund various activities, including operating and maintaining a swimming pool, pool house, pool office, tennis court, and marina (collectively, the "Recreational Facilities").[6] Abbott has paid these annual assessments since purchasing his home in 2013.[7]

(5)    In 2016, NSBG authorized a project to improve sand dunes located in the community (the "Dune Project").[8] The Dune Project was partially performed on land owned

---

[2] B5.
[3] B1.
[4] B5.
[5] B2. The Complaint also named Paul F. Salditt as a defendant. After Salditt's death, the Court granted a stipulated order removing him from the caption. *See Abbott v. N. Shores Bd. of Governors*, No. 155, 2020, Stipulation and Proposed Order to Amend Caption (Del. Sept. 28, 2020) (ORDER).
[6] B3.
[7] *Id.*
[8] *Id.*

2

by individual beachfront homeowners, not the North Shores community.[9] NSBG imposed a special assessment (the "Dune Assessment") to fund the Dune Project.[10] The Dune Assessment was $500 for beachfront homeowners and $250 for other homeowners, including Abbott.[11] Abbott has refused to pay the Dune Assessment.[12]

(6) In August 2016, Abbott submitted a request under 8 *Del. C.* § 220 to inspect NSBG's books and records related to the Recreational Facilities, annual assessments, Dune Project, and Dune Assessment.[13] NSBG refused to comply with the demand, and Abbott filed suit in the Court of Chancery.[14] The court granted summary judgment against Abbott.[15]

(7) On March 8, 2019, Abbott filed a complaint in the Court of Chancery, challenging NSBG's authority to levy assessments and spend money to operate and maintain the Recreational Facilities and the Dune Project.[16] Abbott filed an amended complaint in January 2020 (the "Complaint").[17]

(8) The Complaint alleged three counts. Count I alleged a direct claim that the Directors breached their fiduciary duties of loyalty and care by approving *ultra vires*

---

[9] *Id.*
[10] B3-4.
[11] B4.
[12] B3.
[13] B6.
[14] B6-7.
[15] B7.
[16] App. to Opening Br. 6 (hereafter "A_").
[17] B1.

3

assessments and expenditures related to the Recreational Facilities and Dune Project.[18]

Count II sought a declaratory judgment that the Covenants did not grant NSBG authority to assess, collect, and spend to maintain the Recreational Facilities and the Dune Project, and that NSBG breached the Covenants by authorizing such assessments, collections, and spending.[19] Count III alleged a derivative breach of fiduciary duty claim on the same basis that Count I alleges a direct claim.[20]

(9)  The Court of Chancery dismissed the Complaint under Court of Chancery Rule 12(b)(6), holding that the plain language of the Covenants—and NSBG's corporate charter—authorized the actions Abbott claimed were *ultra vires*.[21] The court also held that *laches* barred Abbott's claims as untimely because all of Abbott's claims accrued in 2013 when he purchased property in North Shores.[22]

(10)  Abbott appeals the Court of Chancery's order dismissing the Complaint, raising two issues. First, Abbott argues that the Covenants do not grant NSBG authority to levy assessments and approve spending related to the Recreational Facilities and the Dune Project.[23] Regarding the Recreational Facilities, Abbott argues that the Covenants only authorize NSBG to maintain facilities depicted in a 1956 plan for the North Shores

---

[18] B9-10.
[19] B11.
[20] B11-12.
[21] Opening Br. Ex. A, at 7-11.
[22] *Id.* at 4-7.
[23] Opening Br. 16-27.

community.[24]  The 1956 plan does not depict the Recreational Facilities.[25]  Regarding the Dune Project, Abbott argues that the Covenants do not give NSBG the power to approve a project that improves property owned by individual beachfront homeowners.[26]  Abbott also argues that because a separate easement grants property owners the right to use the beach, NSBG cannot impose a special assessment to fund the cost of maintaining the beach.[27]

(11)  Second, Abbott argues that the Court of Chancery erred by holding all of his claims accrued in 2013, and therefore *laches* does not bar as untimely claims related to assessments and expenditures that the Directors authorized from 2016 to the present.[28]

(12)  "This Court reviews *de novo* the dismissal of a complaint pursuant to Rule 12(b)(6)."[29]  "In deciding a motion to dismiss under Rule 12(b)(6), a trial court must accept as true all of the well-pleaded allegations of fact and draw reasonable inferences in the plaintiff's favor.  A trial court is not, however, required to accept as true conclusory allegations 'without specific supporting factual allegations.'"[30]  "The grant of a motion to

---

[24] *Id.* at 18-19.
[25] *See* A114.
[26] *Id.* at 20-21.
[27] *Id.* at 20.
[28] *Id.* at 11-15.
[29] *In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 167-68 (Del. 2006) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001)).
[30] *Id.* at 168 (citations omitted) (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65-66 (Del. 1995)).

dismiss is only appropriate when the 'plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.'"[31]

(13)    The Court begins by addressing Abbott's argument that the Covenants did not allow NSBG to authorize assessments and expenditures related to the Recreational Facilities and the Dune Project.  Delaware courts use the ordinary principles of contract interpretation to interpret deed covenants.[32]  "When interpreting a contract, the Court will give priority to the parties' intentions as reflected in the four corners of the agreement . . . , [and] will interpret clear and unambiguous terms according to their ordinary meaning."[33]  "The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan."[34]

(14)    The Covenants grant NSBG broad authority to levy assessments and spend money to maintain North Shores.  For example, Paragraph 20(e) of the Covenants states, "The Board of Governors shall have the powers and duties necessary for the administration of the affairs of NORTH SHORES and may do all such acts and things as are not by law or

---

[31] *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 871-72 (Del. 2020) (quoting *In re General Motors*, 897 A.2d at 168).

[32] *See, e.g.*, *Seabreak Homeowners Ass'n, Inc. v. Gresser*, 517 A.2d 263, 268-69 (Del. Ch. 1986).

[33] *GMG Cap. Invs., LLC v. Athenian Venture P'rs I*, 36 A.3d 776, 779-80 (Del. 2012) (citing *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009)); *see also Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions.").

[34] *GMG*, 36 A.3d at 780 (quoting *Eagle Indus. Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

by these restrictions prohibited."[35]  The same provision specifically grants NSBG the power and obligation to maintain community:

> the Board of Governors shall be responsible for the following:
> 1.  Maintenance, repair, and replacement of the common elements, streets and facilities of the project such as, but not limited to, the construction and maintenance of jetties, groins, bulkheads, traffic control, signs, road entrance structures, landscaping, police protection, road maintenance, street lighting and other such duties as would ordinarily [be] provided and maintained by an attractive development such as NORTH SHORES together with the power to levy assessments to cover the expenditures and all other charges incurred by the Board of Governors in carrying out their duties hereunder.[36]

(15)   The Covenants also allow NSBG to "adjust the annual maintenance charge or assessment"[37] and provide that property owners "shall be subject to an annual maintenance charge or assessment to be levied thereon by the party of the first part, its successors or assigns, . . . in an amount to be fixed by the Board of Governors."[38]

(16)   The plain meaning of the language quoted above granted NSBG and the Directors with the power and obligation to authorize the assessments, collections, and expenditures Abbott claims were *ultra vires*.  Regardless of whether NSBG had the power to construct new facilities, NSBG had an obligation to *maintain* the community's "common elements,"[39] including the Recreational Facilities and dunes.

---

[35] A57, at ¶ 20.
[36] *Id.* at ¶ 20(e)(1).
[37] A58, at ¶ 25.
[38] *Id.* at ¶ 24.
[39] A57, at ¶ 20(e)(1).

(17)   Contrary to Abbott's arguments, nothing in the Covenants limits NSBG's authority to maintaining facilities depicted in the 1956 plan.  Further, the Covenants tasks NSBG with making "capital additions to NORTH SHORES."[40]  If NSBG had an obligation to make future *additions*, its power cannot be limited to maintaining facilities that already existed when the community adopted the Covenants.  That would allow no addition.

(18)   Abbott also argues that the Court of Chancery erred by construing the "attractive development" language to provide NSBG with "virtually unbridled . . . discretion to assess and expend."[41]  This argument misconstrues the court's analysis.  The Court of Chancery did not hold that the "attractive development" language provided NSBG with unlimited discretion to assess and spend.  Rather, the court held that the Covenants give NSBG the power to levy assessments and spend to maintain community facilities, including the Recreational Facilities and dunes.[42]  This does not give NSBG a blank check to levy assessments and spend money on projects not contemplated under the Covenants.

(19)   Abbott's arguments challenging the Dune Assessment and Dune Project are equally unavailing.  The easement granting residents the right to use the beach did not alter NSBG's separate powers and obligations to maintain the community.  Thus, Abbott's well-

---

[40] *Id.* at ¶ 20.

[41] Opening Br. 21.  Abbott is referring to the following language from Paragraph 20(e)(1) of the Covenants:  "the Board of Governors shall be responsible for . . . other such duties as would ordinarily be provided and maintained by an attractive development such as NORTH SHORES . . . ."  A57.  The Court of Chancery italicized this language in its order dismissing Abbott's claims. *See* Opening Br. Ex. A, at 8.

[42] Opening Br. Ex. A, at 8-9.

pleaded allegations do not reveal any tension between the easements and the Dune Assessment. North Shores property owners continue to have the right to use the beach at no additional charge but are subject to a separate obligation to pay annual and special assessments to fund the maintenance of common elements, including the beach.

(20) Similarly, even if the Dune Project provided a disproportionate benefit to beachfront property owners, the Covenants do not prohibit NSBG from engaging in maintenance activities that could benefit some residents more than others. At best, the Covenants restrict NSBG's maintenance powers to "common elements, streets and facilities of the project."[43] Given the Complaint's admission that the Dune Project also benefited, at least in part, portions of the beach that the North Shores community owns,[44] the plain language of the Covenants grants NSBG the power and obligation to engage in maintenance activities like the Dune Project.

(21) For the reasons provided above, the plain language of the Covenants authorized all of the activities that Abbott claims were *ultra vires*.[45] Accordingly, the Court affirms the Court of Chancery's holding that Abbott's Complaint should be dismissed under

---

[43] A57, at ¶ 20(e)(1).
[44] B3.
[45] Abbott argues at length that the Court of Chancery made a reversible error by relying on NSBG's corporate charter to construe NSBG's authority. Opening Br. 22-24. According to Abbott, this amounted to a "backdoor amendment" of the Covenants, circumventing the proper process for amending the Covenants. *Id.* at 24. The Court need not address this argument because the plain language of the Covenants allowed NSBG and the Directors to engage in all of the actions Abbott claims were *ultra vires*.

9

Rule 12(b)(6) because the well-pleaded allegations show that Abbott cannot prevail "under any reasonably conceivable set of circumstances susceptible of proof."[46]

(22)    Because the Court affirms the dismissal on the basis that Abbott cannot prevail on the merits, the Court does not reach the Court of Chancery's separate determination that *laches* barred Abbott's claims as untimely because all of those claims accrued when Abbott purchased his home in 2013.

NOW, THEREFORE, IT IS ORDERED that the Court of Chancery's judgment is AFFIRMED.

BY THE COURT:

*/s/ Tamika R. Montgomery-Reeves*
                            Justice

---

[46] *Windsor I*, 238 A.3d at 871-72 (quoting *In re General Motors*, 897 A.2d at 168).

10